[Cite as *In re P.S.*, 2024-Ohio-1251.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN MATTER OF: | : | JUDGES: |
| P.S. | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Andrew J. King, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 2024CA0001 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Appeal from the Licking County Court of
                             Common Pleas, Case No. F2021-0113

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      April 1, 2024

APPEARANCES:

For - Appellee                      For - Appellant

JENNY WELLS                         JERMAINE L. COLQUITT
Licking County Prosecutor           33 W. Main Street, Ste. 109
BY KENNETH W. OSWALT                Newark, OH  43055
Assistant Prosecutor
20 S. Second Street, 4th Floor
Newark, OH 43055

*Gwin, P.J.*

{¶1} Appellant appeals the December 11, 2023 judgment entry of the Licking County Court of Common Pleas, Juvenile Division, terminating his parental rights and granting permanent custody of P.S. to the Licking County Department of Job and Family Services ("LCJFS").

*Facts & Procedural History*

{¶2} T.R. is the mother ("Mother") of P.S., who was born on November 21, 2019. Appellant R.S. is the father ("Father") of P.S.

{¶3} On April 7, 2021, LCJFS filed a complaint for dependency with regards to P.S. The complaint alleged, in part: Father was arrested and charged with aggravated trafficking in drugs after being pulled over with 190 grams of methamphetamine and small amounts of cocaine in his car; P.S. was in the car at the time Father was pulled over; methamphetamine was located in the child's diaper bag; Father admitted to methamphetamine use; Father has a long history of methamphetamine abuse; Father was convicted of aggravated possession of drugs in 2017; Father is unemployed; Mother admitted she would test positive for methamphetamines; Mother admitted to knowing Father was selling drugs; Mother admitted to knowing there were drugs in the car with the child; Mother has a long history of substance abuse; and Mother previously lost custody of another child due to substance abuse, unstable housing, and unemployment. The trial court held a shelter care hearing and placed P.S. in the temporary custody of LCJFS.

{¶4} The magistrate held an adjudicatory hearing on June 2, 2021. In a judgment entry dated June 3, 2021, the trial court found P.S. to be a dependent child. LCJFS filed a motion to extend temporary custody on March 1, 2022, which the trial court granted.

{¶5} LCJFS filed a motion for permanent custody of P.S. on September 6, 2022. The motion outlined the issues with both Mother and Father, including: Mother has not made progress on her case plan; Mother has continued to test positive for methamphetamines; Mother is unemployed; the caseworker has been unable to verify an address for Mother; Father is incarcerated on a twelve-year sentence with parole eligibility in March of 2029; and Father has not been in contact with the caseworker. Father filed a motion for legal custody to be awarded to his aunt, D.B.

{¶6} The magistrate conducted a trial on LCJFS' motion for permanent custody and Father's motion for custody to be awarded to D.B. on January 9, 2023. At the beginning of the hearing, Father withdrew the motion for custody to be awarded to D.B.

{¶7} Jerome Reed, a scientist at Forensic Fluids Laboratory testified that eight out of eleven drug screens Mother took during the pendency of the case were positive for methamphetamine and amphetamine.

{¶8} V M. is the child's foster mother. P.S. lives at the foster home with her half-brother. V.M. testified that P.S. has been with them for two years, and is bonded with the family. When P.S. first came to the home, she had some trauma eating issues where she would refuse to eat or hoard food in her mouth. Because of those issues, P.S. was in the Help me Grow program twice per month. The issues have now improved. V.M. stated the child has behavioral issues such as aggression and not wanting to be alone after visitations with Mother. V.M. believes her family can provide the child with stability. V.M. has taken P.S. to preschool screenings and has her set up to attend preschool.

{¶9} Brittany Adzic ("Adzic") is the caseworker for P.S. The agency became involved with P.S. when Mother, Father, and the child were pulled over with drugs in the

car. Since that date, Father has been incarcerated. Mother's case plan required her to: complete a substance abuse and mental health assessment and follow all recommendations; address anger management; comply with random drug screens; maintain housing; maintain employment; and complete parenting classes.

{¶10} Father was not an "active participant" on the case plan due to his incarceration and release date (March of 2029). However, the case plan provided that Father would contact the agency upon his release from incarceration to discuss reunification services, including a mental health assessment, drug and alcohol assessment, random drug screenings, parenting education, housing, and employment.

{¶11} Mother was engaged in services at the Licking County Alcoholism Prevention Program. However, in March of 2022, Mother was discharged from the program for not engaging in services. Adzic last talked with Mother in August of 2022, where she provided her with additional resources. Mother informed Adzic she is pregnant and was due on February 26, 2023. Adzic is unsure where Mother lives because Mother has never been home during attempted home visits at two addresses. When Adzic saw Mother at a supervised visitation and asked to speak with Mother, Mother told Adzic, "I don't see you," and walked away. Adzic testified Mother has not made any progress on her case plan. Mother has attended visitation. It was agreed that Mother could have expanded visitation if she had three negative drug screens. However, Mother never had three consecutive negative drug screens.

{¶12} Adzic looked into four potential kinship options, Mother's mother, Mother's sister, Father's aunt, and Mother's niece named Destiny. None of the placements were appropriate because: Mother's mother had significant history with the agency that

disqualified her; Mother's sister wanted no contact with LCJFS and did not want to follow a case plan or agency guidelines; Father's aunt was ruled out due to her health conditions; and Destiny, who P.S. was placed with at the outset of the case for three weeks, was disqualified because her house did not pass a home study or fire inspection. On cross-examination, Adzic stated she visited Destiny's home two weeks prior to the hearing, and no further action had been taken to improve the home. There were still holes in the wall and exposed ceilings. When asked why she did not think Destiny was an option, Adzic testified, "because the same housing conditions [that existed] almost two years ago [exist today] and she still has yet to comply with fixing the home and what's needed."

{¶13} Adzic summarized the reasonable efforts the agency made to avoid the removal of P.S. from the home. These efforts included: providing Mother resources, providing Mother employment options, trying to talk with Mother, and trying to visit Mother at several addresses. Even though Mother had not been working on her case plan, Adzic attempted to contact Mother via text, visited Mother's boyfriend's home, and attempted to speak with Mother after visitation.

{¶14} Adzic believes P.S. needs a legally secure and permanent placement. Adzic believes permanent custody to the agency is in the best interest of P.S.

{¶15} P.S. has been in the foster home for two years with her half-brother. At the beginning of the case, there were some issues with P.S. such as hoarding food and biting issues. P.S. is improving and doing much better now.

{¶16} Mark Poole ("Poole") is the guardian ad litem for P.S. Poole has not been able to speak to Father due to his incarceration. Poole has spoken to Mother via

telephone.  He attempted to meet with her at her home, but she was not there.  Mother is not in compliance with her case plan.

{¶17}  Poole believes it is in P.S.'s best interest for LCJFS' motion for permanent custody to be granted.  Poole has visited P.S. at the foster home.  P.S. is doing well with the foster family, and he has no concerns about her placement there.  P.S. has been in this home for more than half her life, and is very comfortable there.  She is placed with her brother.  Poole does not believe either Mother or Father is able to provide an adequate and permanent home for P.S.  Due to their history, Poole believes there would be "overwhelming risk" to P.S. to place P.S with either Mother or Father.

{¶18}  Father testified via remote link from prison.  Father pled guilty to aggravated possession of methamphetamine, a first-degree felony, and aggravated trafficking in methamphetamine, a felony of the first degree.  He is taking his GED.  His prison time is mandatory time.  Father wants P.S. to be placed with Destiny.  Father described how Destiny was previously involved in P.S.'s life.

{¶19}  The magistrate issued a decision on June 21, 2023, containing detailed findings of fact and conclusions of law, granting permanent custody of P.S. to LCJFS, and terminating Mother and Father's parental rights.  In her findings of fact, the magistrate found, in part:  Mother has not remedied the concerns that led to the child's removal; Father's anticipated release date is March of 2029; Mother has not remedied the substance abuse and mental health concerns which contributed to P.S.'s removal; Mother failed to engage in treatment; Mother refused several drug screens and tested positive for methamphetamines eight times; P.S. is very bonded to the foster family; and the agency was unable to identify any appropriate relative placement.

**{¶20}** The magistrate found P.S. cannot and should not be placed with either parent within a reasonable time. As to Mother, the magistrate found Mother demonstrated a lack of commitment towards P.S. by failing to provide an adequate permanent home for P.S. and failing to complete the case plan. As to Father, the magistrate found Father abandoned P.S. because he has failed to visit or maintain contact with the child for ninety days. Further, that P.S. cannot be placed with Father within a reasonable time because he is incarcerated and will not be available to care for the child until at least March of 2029, his anticipated release date.

**{¶21}** Additionally, the magistrate found P.S. has been in the temporary custody of LCJFS for twelve or more months of a consecutive twenty-two-month period because P.S. has been in continuous custody of the agency since June 2, 2021.

**{¶22}** Finally, the magistrate found, considering the best interest factors, it is in the best interest of P.S. to be placed in the permanent custody of LCJFS. The magistrate stated: P.S. has had no in-person contact with Father since March of 2021 and no video contact with Father since September of 2021; P.S. has no significant bond to Father; P.S. is bonded to her foster family; P.S. needs permanency; P.S. needs a legally secure placement; Mother has a significant history with the agency; Mother has not remedied the issues that led to the child's removal; the agency explored four kinship placements, but each one was unsuitable; and the GAL and caseworker testified it is in P.S.'s best interest for permanent custody to be granted to LCJFS.

**{¶23}** Father filed objections to the magistrate's decision on July 5, 2023. Father also filed a motion requesting a transcript and extension to file supplemental objections. The trial court granted the request for transcript, and granted Father additional time to file

supplemental objections upon receipt of the transcript. The transcript was filed on August 22, 2023. No party filed supplemental objections to the magistrate's decision.

**{¶24}** The trial court issued a judgment entry on December 11, 2023, overruling Father's objections to the magistrate's decision. Specifically, as to the best interest finding, the trial court considered each of the relevant factors contained in R.C. 2151.414(D).

**{¶25}** Father appeals the December 11, 2023 judgment entry of the Licking County Court of Common Pleas, Juvenile Division, and assigns the following as error:

**{¶26}** "I. THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY OF P.S. IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE BECAUSE THE AGENCY DID NOT PROVE THAT GRANTING THE MOTION WAS IN THE CHILD'S BEST INTEREST."

*Permanent Custody*

**{¶27}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

**{¶28}** Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent and credible evidence going

to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶29} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶30} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency.

{¶31} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or

more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶32} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

I.

{¶33} In his assignment of error, Father does not dispute that one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present. Rather, Father contends the trial court's determination that the best interest of the child would be served by granting permanent custody to LCJFS was against the manifest weight and sufficiency of the evidence. Father cites his bond with the child in support of his argument, and his testimony that Destiny would be an appropriate placement option because she has a bond with P.S.

{¶34} We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of the child should be accorded the utmost respect, given the nature of the proceeding and the impact that court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1799973 (Nov. 13, 2000), citing *In re Awkal*, 85 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist. 1994).

{¶35} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including,

but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶36} The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schafer*, 11 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532. *In re Schafer* made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, does not include finding by clear and convincing evidence that no suitable relative was available for placement. *Id.* R.C. 2151.414 "requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.*

{¶37} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re Awkal*, 85 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist. 1994).

{¶38} We find the trial court did not commit error in finding that granting permanent custody to LCJFS is in the best interest of P.S.

{¶39} Adzic testified P.S. needs a legally secure and permanent placement, and this can only be achieved by permanent custody to LCJFS. Adzic believes permanent custody to the agency is in the best interest of P.S. Adzic described how P.S. has been in the foster home for two years with her half-brother, is doing well, and is bonded to the family. V.M. testified that P.S. is bonded to the family in the foster home.

{¶40} Poole also believes it is in P.S.'s best interest for LCJFS' motion for permanent custody to be granted. Poole testified there would be "overwhelming risk" to P.S. to place her with either Father or Mother. Poole described how P.S. is doing well with the foster family and how she is comfortable in the foster home, where she has been for more than half her life. P.S. is placed at the home with her half-brother.

{¶41} As to Father's argument that a placement with Destiny is in the best interest of P.S., Adzic testified that P.S. was placed with Destiny at the outset of the case for three weeks. However, P.S. was removed because Destiny's home did not pass a home study or fire inspection, and Destiny was informed that, to be considered for placement, she had to bring the house up to code to pass a fire inspection and home study. Adzic visited the home two weeks prior to the hearing, which was approximately two years later than the initial placement, and no further action had been taken to improve the home. There were still holes in the wall and exposed ceilings. When asked why LCJFS did not feel a placement with Destiny was in P.S.'s best interest, Adzie testified, "the same housing conditions [that existed] almost two years ago [exist today] and she still has yet to comply with the fixing the home and what's needed."

{¶42} We find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to LCJFS is in the best interest of the child is supported by competent and credible evidence.

{¶43} Father's assignment of error is overruled.

{¶44} Based on the foregoing, Father's assignment of error is overruled. The December 11, 2023 judgment entry of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, P.J.,

Hoffman, J., and

King, J., concur